IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PRIMROSE LESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-488-JHP |
| | ) | |
| KMART CORPORATION, a foreign | ) | |
| corporation, and SEARS HOLDING | ) | |
| CORPORATION, a foreign corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are Defendant Kmart Corporation's Motion for Summary Judgment

[Docket No. 30]; Plaintiff Primrose Lester's Response in Opposition [Docket No. 44];

Defendant's Reply [Docket No. 52]; and Plaintiff's Surreply [Docket No. 61].  For the reasons

stated below, Defendant's Motion is GRANTED.

## BACKGROUND[1]

**I.  Factual Background**

Primrose Lester, who is Native American, began working at the Muskogee Kmart as a

cashier in 2001.  In 2002, Lester was promoted to department manager for Kmart.  During her

time as a department manager, Lester was issued written reprimands or "write-ups" on several

---

[1] As an initial matter, the Court notes that Lester's response brief is largely in violation
of LCvR 56.1(c) which requires a "concise statement of material facts to which the party asserts
genuine issues of facts exist.  Each fact in dispute shall be numbered, [and] shall refer with
particularity to those portions of the record upon which the opposing part relies . . ."  Lester's
statement of facts are far from concise and it is difficult to understand which facts are disputed
and what the basis is for disputing such facts.  Nevertheless, after reviewing the exhibits attached
to both parties' briefs the Court has determined that any facts in dispute are not material.

1

occasions.  On February 13, 2003, Lester was issued a written warning regarding improperly making change for customers at the register.  On April 2, 2004, Lester was written-up for an unexcused absence from work.  On September 22, 2004, she was written-up for not finishing her assigned tasks.  After this write-up, Lester complained that she was not being treated fairly.  On February 22, September 29, and October 17, 2005, Lester was reprimanded for register shortages.  She was warned that further register variances would result in corporate action.  On February 4, 2006, an employee lodged a complaint against Lester for sending the employee home early because she had "attitude."

On February 5, 2006, Lester was promoted to Assistant Manager.  At this time, Leon Degenhardt was the Store Manager and there was one other Assistant Manager.  Although she was promoted, Lester continued to have performance problems.  Additionally, Lester lodged several complaints, official and unofficial, regarding her co-workers and supervisors.  The Court will not attempt to address every incident that occurred during Lester's employment, but will focus only on the incidents material to the current Motion. On March 27, 2006, Lester was written-up for three issues: (1) being open to direction from her superior; (2) needing to keep her work and personal life separate;[2] and (3) insubordination.  On April 16, 2006, Lester again received a write-up for several issues: (1) her boyfriend's disruptive behavior at the store; (2) failure to return a completed management test; (3) not getting carts put up timely; (4) not keeping her assigned area in shape; and (5) missing morning meetings.  After this write-up, Lester claimed that she was being harassed because she was being reprimanded for things she

_____

[2] A couple of weeks earlier, Lester's boyfriend used foul language and berated another Kmart employee over the phone.

did not do, such as her boyfriend's actions.  Lester stated that she wanted a harassment case started right away.  Degenhardt and HR Representative Karen Clark gave Lester the appropriate forms to complete, but she never filled them out.

On August 31, 2006, Lester was reprimanded for not following the correct procedure when a bag of money was missing at closing.  On September 13, 2006, Lester was written-up for writing bad checks at a different Kmart.  On the same day, Lester expressed to Degenhardt her desire to leave her management position and return to an hourly position.  Degenhardt got the change approved by District Manager Jeff Savage, but Lester informed him that she was just exploring her options and did not know what she wanted to do.  Lester then talked with Savage who stated that she could either take the hourly position or be terminated.  The next day, Savage apologized to Lester and told her that she did not have to leave her management position.

At some point in mid-November, Lester was late to work.  She was not immediately written-up for her tardiness.  On November 26, 2006, Lester did not report to work.  On November 30, 2006, Lester emailed the CEO of Kmart and stated that she had some issues she needed to discuss with him.  There is no indication in the record that a discussion between Lester and the CEO took place after her email.  On December 2, 2006, Lester left early without clearing it with her manager, however, she left a note stating that she was leaving because of a family emergency.  Lester was scheduled to work the next day but did not show up for her shift.

On December 4, 2006, Savage emailed regional HR representative Aimee Grabau advising her that he would like to terminate Lester for her performance and attendance problems.  Savage was informed that Lester had just filed a complaint of harassment and no discipline could

3

be considered until an investigation was completed.[3]  Grabau, however, informed Savage that Lester could be issued write-ups for her recent unexcused absences.  The next day, December 5, 2006, Lester was written-up for leaving work early on December 2 and for missing work December 3.  Lester was also written-up for an unexcused absence and a tardy that occurred toward the end of November but were not immediately documented.  It is important to note that Lester does not dispute that she was absent or tardy on any of the days alleged by Kmart.

On December 6, 2006, Savage and Cody VanCamp, Kmart's Loss Prevention officer, visited the store and helped Lester fill out harassment forms.  Lester complained Degenhardt was harassing her by pointing out every little thing she did wrong.  She alleged the harassment was because of her age, race, and job performance/productivity.  While at the store Savage and VanCamp interviewed 11 employees, including Lester.  None of the other employees corroborated Lester's allegations.  On December, 27, 2006, Lester sent a second email to Kmart's CEO complaining that she was "under siege by the good ole boys club."   On December 28, Lester met with Savage, VanCamp, and Dana Jordan, at which time she was informed that they had found no merit to her harassment claims.  The next day, Lester wrote that she was not satisfied with the investigation.  On January 8, 2007, Lester filed another complaint with Kmart's corporate office.  This complaint resulted in a follow-up meeting with Grabau where the two discussed a joint plan for Lester which included additional training.  On February 24, 2007, Lester emailed Steve Debber regarding the mistreatment of associates.  Subsequently, Debber

---

[3]  In her response brief, Lester attempts to dispute Kmart's version of how the communication between Savage and Grabau occurred on December 4, 2006.  However, the email printouts attached by Lester as Exhibit 3 to her response [Docket No. 44-4] actually support the facts set out in Kmart's summary judgment motion.

traveled to the store and met with Lester. After this meeting, Lester made no more complaints to Kmart regarding the way she was treated.  On May 10, 2007, Lester was placed on a Performance Improvement Plan concerning her work.

On June 5, 2007, Lester began  a scheduled vacation from which she was supposed to return to work on June 20.  On June 18, 2007, Kmart received a faxed letter from Montezuma Creek Clinic which stated that Lester was under their care and was scheduled to be seen again on June 26, 2007.  Around this time, Lester called the store to say that she had a cyst and had been referred to a surgeon.  On the same day, Lester's husband called the store and said that Lester was in the hospital.  Kmart alleges that it heard nothing more from Lester, so they left her a phone message on June 26, 2007.  Lester alleges that she contacted Kmart's H.R. office on June 23.  On June 28, 2007, Kmart called MetLife, Kmart's short-term disability insurance administrator, to see if Lester contacted them, she had not.  On the same day, Kmart again attempted to reach Lester by phone.  Later that day, Lester's husband called Kmart and stated that she was in the hospital in New Mexico.  He also said that they should know something by July 3.  Savage told Lester's husband to be sure to call on July 3 or 4 to update Kmart.  Lester had no further communication with Kmart until July 10.  On July 10, 2007,  Kmart received a fax indicating that Lester was in a medical facility on July 3.  The fax contained no further explanation and did not indicate Lester's whereabouts after July 3.  Kmart again tried to reach Lester by phone but was unsuccessful.

On July 21, 2007, Kmart left a message on Lester's mother's phone asking her to have Lester call the store.  Lester's mother called back and stated that Lester was going to be fine and she did not need surgery.  Kmart asserts that it still had not heard from Lester as of July 24.

5

Lester alleges that she spoke with the H.R. office on July 24.  That same day, Kmart was

informed by MetLife that it had no contact with Lester since June 29 and that she was not

approved for additional short-term disability pay at that time.  Lester was approved for short-

term disability pay for the period of June 13 through July 8, 2007.  On July 27, 2007, Degenhardt

wrote a letter to Lester informing her that she is no longer approved for short-term disability

because she has failed to provide the necessary information.  He also advised her that she had

been placed on personal unpaid leave.  Furthermore, Degenhardt advised Lester that she needed

to provide the necessary documentation to MetLife or return to work by August 6, 2007, or she

would be terminated.

On August 5, 2007,  Lester arrived at the store and told Degenhardt she was back.

Degenhardt then instructed her to return the following day with her paperwork because there had

been no communication with Kmart.  The following day Lester did not return to work or provide

documentation explaining her absence.  Lester showed up at the store on August 7 and asked

what paperwork she needed.  Degenhardt advised her that she needed a doctor's release and

confirmation that she was absent for medical reasons.  On August 8, Kmart received a three

sentence letter stating: "[t]his letter is to fully release Primrose [Lester] . . . to any work related

duties without restrictions . . ."  The letter, however, was only a release and did not explain why

Lester was absent from work.  In fact, Lester admitted that physically she could have returned

earlier, but she could not get back to Muskogee because she was out of money.

Lester reported for work on August 9, 2007, but was sent home because she had not

provided documents confirming she was absent for medical reasons.  Between August 9 and

August 15, Lester had no contact with Kmart.  Lester claims she was distracted during this time

because her car had been repossessed and her house was in foreclosure.  On August 15, 2007,

Lester called and asked to speak with Savage who was unavailable.  On August 16, Savage

emailed Grabau and inquired about terminating Lester.  Degenhardt confirmed that Lester had

not provided the requested medical documentation.  That day, Lester was sent a letter

terminating her employment with Kmart.  On August 17, Lester called Kmart's corporate office

and was informed that she had been terminated.  On August 18, Lester received the termination

letter.

## II.  Procedural Background

On July 23, 2008,  Lester filed a petition against Kmart in the District Court of Tulsa

County.  In her petition, Lester asserts the following causes of action: (1) that Kmart

discriminated against Lester because of her race, Native American,  in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment;

(2) that Kmart retaliated against Lester for making an internal complaint of discrimination in

violation of Title VII; (3) that Kmart discriminated against Lester because of her race in

violation of 42 U.S.C. § 1981; (4) that Kmart interfered with Lester's rights under the Family

Medical Leave Act of 1993, 29 U.S.C. § 2601-2654 ("FMLA"); and (5) that Kmart retaliated

against Lester for exercising her rights under the FMLA by terminating her.  On August 25,

2008, Kmart removed the case to this Court.  Kmart argues that it never discriminated or

retaliated against Lester and that she was terminated solely because, despite repeated demands

by Kmart, she did not provide documentation to show that her two month absence from work

was for medical reasons.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249

### II.  Title VII and §1981 Claims[4]

A.  *Wrongful Termination*

Although not expressly stated in her Petition, it appears that Lester is asserting a wrongful termination claim under Title VII and 42 U.S.C. § 1981.  Wrongful termination claims under Title VII and § 1981 are both analyzed using the burden-shifting approach set forth in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973).  *English v. Colorado Dept. of Corrections*, 248 F.3d 1002, 1007 (10th Cir. 2001).  In order to present a prima facie case of

---

[4]  From her response brief it appears Lester may have abandoned her Title VII and § 1981 claims other than her retaliation claim.  Because it is not clear whether Lester abandoned these claims, the Court will address them as they are easily disposed of on the merits.

wrongful discharge, Lester must demonstrate that she belongs to a protected class, she was qualified for her job, she was discharged, and her job was not eliminated. *Id*. at 1008. For the purpose of this motion, Kmart does not dispute that Lester has made a *prima facie* showing.

Under the *McDonnell Douglass* framework, once Lester has made a *prima facie* showing, the burden shifts to Kmart to articulate a legitimate, non-discriminatory reason for terminating Lester. Kmart asserts that Lester was terminated because she missed over two months of work and maintained only sporadic contact with her supervisor. Additionally, Kmart asserts that once Lester finally returned to work, she failed to provide the requested documentation justifying a medical need for the unscheduled absence. The Court finds that Kmart's explanation for terminating Lester satisfies its burden of articulating a legitimate, non-discriminatory reason for the termination. As a result, the burden shifts back to Lester to show that Kmart's articulated reason is merely pretext for illegal race discrimination. Under this prong, "[m]ere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Ettsity v. Utah Transit Auth*., 502 F.3d 1215, 1225 (10th Cir. 2007) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Further, the Tenth Circuit has held that courts should not "second guess the business judgment of the employer," but "[i]nstead, the relevant question is whether the reason articulated by the employer was the real reason for the challenged action." *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1261 (10th Cir. 2001).

Here, Lester has offered nothing more than "mere conjecture" that Kmart's articulated reason for terminating her was pretext for unlawful race discrimination. Lester has offered absolutely no evidence indicating any racial animosity by any supervisor or decision-maker at Kmart. Lester took a scheduled vacation on June 5, 2007, and was scheduled to return to work

on June 20, 2007.  Lester did not return to work until August 5, 2007.  During the two months she was away from work, Lester maintained, at most, sporadic contact with Kmart and never advised it of when she would be returning to work. Once she finally returned to work, Kmart made several requests for Lester to provide documentation indicating that her absence was because of a medical condition.  Lester did not provide any information explaining why she was absent from work past July 3, 2007.  Lester was warned that a failure to provide the necessary documentation would result in her termination.  After receiving Kmart's request for documentation and warning about her possible termination, Lester went for another 6 days, from August 9-15, without contacting Kmart or providing the requested documentation.  At that point, Kmart decided to terminate Lester.  Based on these facts and the lack of any evidence of racial animus, the Court finds that Lester cannot meet her burden of showing pretext.  Accordingly, Kmart is entitled to summary judgment on Lester's wrongful termination claims.

   B. <u>Hostile Work Environment</u>

   Lester asserts that Kmart's treatment of her created a hostile work environment.  In order for hostile work environment claim to be actionable, Lester must establish that "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on [race]; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive work environment." *Dick v. Phone Directories Co., Inc*., 397 F.3d 1256, 1263 (10th Cir. 2005).  To survive summary judgment on her hostile work environment claim, Lester must show that a rational jury could infer that she was targeted for harassment because of her race or national origin. *Sandavol v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004).

Lester provides no evidence linking the alleged harassment to her race.  Although Lester received many reprimands over her years of employment with Kmart, there is simply no evidence which indicates that anyone at Kmart harbored racial animus towards her.  In her summary judgment briefing, Lester does not point to a single racial slur, comment, or joke attributable to anyone at Kmart.  In fact, Lester stated that she believed management was "nitpicking" because she was a young woman who was standing up for herself.  At best, Lester has shown that there might have been a  personality conflict between herself and the store manager.  However, the law does not provide a cause of action for personality conflicts.  *See Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1214 (10th 1998).  Because Lester has not made the requisite showing that she was targeted for harassment because of her raise, her hostile work environment claim fails as a matter of law.  The Court does not reach the questions of whether Lester was subject to unwelcome harassment and whether the alleged harassment was sufficiently severe or pervasive.

C.  Retaliation[5]

On the subject of retaliation, Tittle VII states:

It shall be an unlawful employment practice for employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Lester alleges that Kmart retaliated against her because she made an internal complaint of discrimination.  Lester contends that Kmart's retaliation consisted of

---

[5]  Although the language 42 U.S.C. § 1981 does not expressly include a retaliation claim, the United States Supreme Court has recently held that § 1981 encompasses retaliation claims. *CBOS West Inc. v. Humphries*, __ U.S.__, 128 S.Ct. 1951 (2008).

creating a racially hostile work environment after the internal complaint and eventually terminating her employment.

Similar to wrongful termination claims, retaliation claims are analyzed using the burden-shifting approach set forth in *McDonnell Douglass*.  *See Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1181 (10th Cir. 2006).  First, Lester must establish a *prima facie* case of retaliation which requires her to show "that (1) she engage in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a casual nexus between her opposition and the employer's adverse action." *Id*.  Kmart disputes that Lester has made a *prima facie* case of retaliation.  The Court will address the two alleged instances of retaliation separately.

1. *Termination*

Lester cannot make a *prima facie* showing that her termination was in retaliation for her internal complaint of discrimination.  There is no dispute that Lester engaged in protected opposition to alleged discrimination by filing her internal complaint in December of 2006. Further, Lester's termination was a material adverse action.  Accordingly, only element number three is in dispute in regard to her termination.  Lester "may establish the causal connection by proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Annet v. Univ of Kan*., 371 F.3d 1233, 1239-40 (10th Cir. 2004).  Here, Lester's termination nearly nine months after her complaint is too remote in time to support an inference of causation.  *See Id.* (finding that termination nine months after a complaint was too remote to support an inference of causation which would satisfy the third element of a *prima facie* retaliation claim).  Lester does not cite to any other

12

evidence in support of her allegation that she was terminated because of her complaint.  Thus,

Kmart is entitled to summary judgment on Lester's retaliation claim based on her termination.

     2.  *Hostile Work Environment*

     Independent of her termination, Lester also contends that Kmart retaliated against her by

creating a hostile work environment after she made her internal complaint.  Lester's allegations

regarding Kmart's retaliation are conclusory at best.  Lester's only support for her claim of

hostile work environment retaliation is that she received "staged write-ups" the very day after

she made her internal complaint.   Lester alleges the write-ups were "staged," however, the Court

notes that she does not dispute that she was in fact absent or late to work as alleged in the write-

ups.  Nevertheless, the Court finds that the write-ups, whether staged or not, are not sufficiently

severe or pervasive to constitute a hostile work environment.

     As stated above, one of the elements required for an actionable hostile work environment

claim is that the harassment's severity or pervasiveness  altered a term, condition, or privilege of

the plaintiff's employment and created an abusive work environment.  *Dick,* 397 F.3d at 1263.

Here, Lester received write-ups on December 5, 2006, the day after she made her initial

complaint.  Lester did not receive any further write-ups or disciplinary actions until May 10,

2007, when she was placed on a Performance Improvement Plan.  First, Lester has not shown

that the write-ups were sufficiently severe.  The record shows that Lester had been written-up

many times throughout her employment and still managed to get promoted twice.  Lester has not

shown that the write-ups had any significant impact on her employment with Kmart or her

opportunity to receive promotions.  Further, the write-ups were not pervasive.  Following the

three write-ups on December 5, 2006, she received no further disciplinary action for a five month

period.[6]  Although the Court acknowledges that an evaluation of severity and pervasiveness in this context is often better suited for jury determination, *see O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1097-98 (10th Cir. 1999); the Court finds Lester's evidence so lacking that no rational jury could find that she was subjected to an abusive working environment.  Therefore, Lester's hostile work environment retaliation claim also fails.

## IV.  FMLA Claims

In additional to her discrimination and retaliation claims under Title VII and § 1981, Lester alleges interference and retaliation claims under the FMLA.  The Court will address each claim in turn.

### A.  FMLA Interference Claim

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter."  29 U.S.C. § 2165(a).  Lester alleges that Kmart interfered with a right guaranteed by the FMLA when it terminated her after she took FMLA-protected leave.  Lester claims her absence from June 5, 2007, to August 5, 2007, was FMLA-protected leave.  To establish an interference claim, Lester must show: "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or the attempted exercise of h[er] FMLA rights."  *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citation omitted).  In order to satisfy the first prong, Lester must prove by a preponderance of the evidence that she was entitled to FMLA

---

[6]  Assuming her placement on the Performance Improvement Plan was actually a disciplinary action.  If not, the period of time was even longer.

leave.  Lester was entitled to FMLA leave if her absences were "because of a serious health condition" which rendered her unable to perform the functions of her job.  29 U.S.C. § 2612(a)(1)(D).  Failure to prove a serious health condition is fatal to a plaintiff's FMLA claim. *See Silcox v. Via Christi Oklahoma Regional Medical Center-Ponca City Inc.*, 196 Fed.Appx. 658, 2006 WL 2536602, at *1-2 (10th Cir. 2006).  A "serious health condition" entitling an employee to FMLA leave involves either inpatient care, or "continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

Lester has failed to prove she received either impatient care or continuing treatment from a health care provider.  The entirety of the documentation that Lester provided Kmart regarding her alleged health condition is as follows: (1) she was seen by a physician's assistant on June 13, 2007, and was scheduled for a follow-up appointment on June 26, 2007; (2) she visited a clinic of some sort on July 3, 2007; (3) MetLife approved her for short-term disability benefits from June 13 through July 8, 2007; and (4) Kmart received a three sentence fax on August 8, 2007, stating that Lester was fully released to participate in any work related duties.[7]  This evidence does not prove that Lester was entitled to FMLA leave because she suffered from a "serious health condition."  In fact, this evidence does not even reference the nature of Lester's alleged health problem.  As a result, Lester cannot make a prima facie case of interference under the FMLA and Kmart is entitled to summary judgment on the FMLA interference claim.

B. <u>FMLA Retaliation Claim</u>

FMLA retaliation claims are analyzed under the burden-shifting approach set out in

---

[7]  Additionally, Lester provided two letters from a physician's assistant which summarily state that her absences from work were for unspecified medical reasons.  These letters, however, are dated September 7 and September 10, 2007, several weeks *after* Lester was terminated.

*McDonnel Douglas* and discussed by the Court in section II A of this Order. *Moragn v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). To establish a prima facie case for an FMLA retaliation claim, Lester must show that (1) she engaged in a protected activity; (2) the employer took an action that a reasonable employee would have found materially adverse; and (3) a causal connection between the protected activity and the adverse action. *Cambell*, 478 F.3d at 1287. Even assuming Lester can establish a *prima facie* case, she cannot show that Kmart's articulated reason for terminating her was merely pretext.

Kmart asserts that Lester was terminated because she refused to provide medical documentation showing that her absence was because of a medical condition. This is a legitimate reason for termination. The Eighth Circuit has stated:

> [i]n order to benefit from the protections of the statute, an employee must provide his employer with enough information to show that he may need FMLA leave. Although the employee need not name the statute, he must provide information to suggest that his health condition could be serious. Employees thus have an "affirmative duty to indicate both the need and the reason for the leave," and must let employers know when they anticipate returning to their position.

*Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990-91 (8th Cir. 2005) (internal citations omitted). Lester alleges that she gave Kmart enough information to put it on notice that she may need FMLA leave, however, the record refutes her allegation. As set out in the previous section, Lester provided Kmart with no information to suggest her health condition could be serious. The only information relating the nature of Lester's condition is a call from Lester stating that she had a cyst and a subsequent call from her mother stating that "Lester was going to be fine." Because the FLMA was not intended to cover leave for short-term conditions, Kmart had the right to request proof that her health condition was serious. *See Id.* at 990. Further, Lester was warned that a failure to provide proof that she was absent for medical reasons would result in her

16

termination.  Despite the repeated requests and warning, Lester did not provide Kmart documentation that she was absent from work for medical reasons.  "An employer cannot be deemed to retaliate against an employee by asking her to fulfill her obligations under the FMLA."

 *Ridings v. Riverside Mediacl Center*, 537 F.3d 755, 772 (7th Cir. 2008).

Lester cannot make the requisite showing that Kmart's clearly legitimate reason for terminating her was pretext.  Lester argues that the timing of her termination establishes pretext.  However, the Tenth Circuit has "never allowed 'even very close temporal proximity [taken alone] to operate as a proxy for the evidentiary requirement that the plaintiff must demonstrate pretext."  *Campbell*, 478 F.3d at 1290 (citation omitted).  Moreover, Lester was not fired when she first reported back to Kmart.  At that point, Lester was instructed to get the proper documentation for her absence.  It wasn't until Lester went another six day period without contacting Kmart or providing the requested documentation that she was finally terminated.  Lester admits that she had no contact with Kmart for six days, between August 9-15, 2007, because she was distracted by personal issues.  Lester also argues that Kmart gave differing reasons for Lester's termination to the Oklahoma Employment Security Commission and to this Court.  Lester argues that this disparity also gives rise to an inference of pretext.  This alleged statement, however, is not sufficient to show that Kmart's stated reason is pretext.  There is no indication of who made the statement to the OESC.  Without providing further information or context, the statement made to the OESC is, at best, characterized as a stray remark by a non-decision maker.  Such a statement is insufficient to survive summary judgement.  *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994); *see also Stone v. Autoliv ASP,*

*Inc.*, 210 F.3d 1132 (10th Cir. 2000);  *Foster v. Ruhrpumpen*, Inc., 166 Fed.Appx. 389 (10th Cir. Feb. 13, 2006).  Because no rational jury could find that Kmart's articulated reason for terminating Lester was pretext, Kmart is entitled to summary judgment on Lester's FMLA retaliation claim.

### <u>CONCLUSION</u>

For the reasons set forth herein, Kmart's Motion for Summary Judgment is hereby GRANTED.


IT IS SO ORDERED.

James H. Payne
United States District Judge
Northern District of Oklahoma